IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

CRYSTAL DIXON,

                Plaintiff,                Case No. 3:08 CV 2806

-vs-

                                          MEMORANDUM OPINION

UNIVERSITY OF TOLEDO, et al.,

                Defendant.

KATZ, J.

This matter is before the Court on Plaintiff Crystal Dixon's motion to amend the Amended Complaint and file a Second Amended Complaint (Doc. No. 25) which Defendants oppose (Doc. No. 28). This matter is also before the Court on Defendants' motions to dismiss (Doc No. 12, 20) to which Plaintiff has filed oppositions (Doc. No. 19, 22) and Defendants have filed a reply (Doc. No. 23). The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and the Equal Pay Act ("EPA").

Defendants consist of the University of Toledo ("University"); Lloyd Jacobs, individually and in his official capacity as President of the University; and, William Logie, individually and in his official capacity as Vice President for Human Resources and Campus Safety.

**I. Background**

    **A. Procedural**

On December 1, 2008, Dixon filed her original Complaint. (Doc No. 1). The Complaint requested relief on the basis of the following two claims: (1) Defendants violated Plaintiff's First Amendment rights, and (2) Defendants violated Plaintiff's Fourteenth Amendments rights protected under 42 U.S.C. § 1983. On January 15, 2009, Defendants filed their Answer as well

their first motion to dismiss the Complaint. (Doc No. 12, 13). In the motion, Defendants expressed that all claims must be dismissed against the University and Jacobs and Logie in their official capacities. (Doc. No. 12). Defendants believed that the University, as a state instrumentality, is immune from 42 U.S.C. §1983 claims, and that the University is not a "person" under the statute. Furthermore, Defendants argued that the Eleventh Amendment precludes an award of monetary damages on Plaintiff's claims against the University and against Jacobs and Logie acting in their official capacity for the state. (*Id*.).

On March 6, 2009, Dixon amended the Complaint and, in doing so, mooted Defendants' first motion to dismiss. (Doc No. 14, 18). The Amended Complaint does not bring any claims for relief pursuant to 42 U.S.C. § 1983 against the University. (Doc No. 19). Moreover, the Amended Complaint no longer seeks monetary damages under 42 U.S.C. § 1983 against Jacobs and Logie in their official capacities. (*Id*.). Both parties note that the Amended Complaint effectively mooted Defendants' first motion to dismiss. (Doc No. 19 at 2; 20 at 2). However, the Amended Complaint adds an EPA claim against all Defendants. On March 20, 2009, Defendants filed their second motion to dismiss, this time arguing against Plaintiff's EPA claim. (Doc. No. 20). The Court shall address Defendants' second motion to dismiss in Part III of this opinion.

**B. Factual**

At this stage, the Court views the Complaint in a light most favorable to Plaintiff, accepts all of its factual allegations as true, and resolves every doubt in Plaintiff's favor. The facts as alleged by Plaintiff Dixon are summarized below.

Prior to the events leading to the present case, Plaintiff Crystal Dixon was working full-time as the Acting Administrator for Human Resources at the Medical University of Ohio. In the

2

summer of 2006, The University of Toledo merged with The Medical University of Ohio. Dixon's employment continued with the University as the Associate Vice President for Human Resources for the Medical University's campus. In July 2007, Dixon was promoted to Interim Associate Vice President for Human Resources for the entire University.

In April 2008, Michael Miller published an article in the *Toledo Free Press*. Michael Miller, *Lighting the Fuse: Gay Rights and Wrongs,* Toledo Free Press (April 4, 2008), available online at: http://www.toledofreepress.com/2008/04/04/gay-rights-and-wrongs/. Miller's article compared the plight of African-Americans during the Civil Rights movement to that of homosexuals fighting for equal rights today. Plaintiff Dixon felt compelled to respond for religious and other personal reasons. Dixon's article was also published by the *Toledo Free Press* and took the opposing view of Miller's article. Crystal Dixon, *Gay Rights and Wrongs: Another Perspective,* Toledo Free Press (April 18, 2008), available online at: http://www.toledofreepress.com/2008/04/18/gay-rights-and-wrongs-another-perspective/. Dixon claims that she wrote this article as a private citizen and it was not at all associated with her life as an employee of the University.

The University took umbrage with Dixon's article and conducted an investigation that ultimately led to Dixon's termination from the University. On May 8, 2008, the University held a hearing and, several days later, Dixon learned by mail that she was fired. The termination letter from the University allegedly stated that the reasons for Dixon's termination was that her article's underlying message was in direct conflict with the "University's policies and procedures as well as its Core Values of the Strategic Plan which is mission critical." As a result of the termination, Dixon brought this suit.

3

In their most recent motion, Defendants ask only for dismissal of the EPA claim (Doc No. 20), and thus the Court will not consider the First and Fourteenth Amendment claims.

Dixon alleges that when she was terminated, a man who was grossly under qualified for her job replaced her. (Doc No. 20, ¶ 33). Dixon alleges that her successor is a "deposed Dean" who resigned after the University's faculty publicly voiced concerns about his leadership and responsibility for carrying out Dixon's former duties. (*Id.*). Dixon alleges that her successor's annual salary was $40,000 more than her former salary and that he preformed substantially similar work, which required substantially equal skill, effort, responsibility, and working conditions. (*Id.*). Furthermore, Dixon alleges that Defendants' culture of unequal pay is further evidenced by the fact that no downward pay adjustment occurred when Defendant Logie was demoted from Interim Sr. Vice President for Finance and Administration to Vice President for Human Resources and Campus Safety, a lesser role in the University. (*Id.*).

## II. Motion for leave to file a Second Amended Complaint

Before turning to Defendants' second motion to dismiss, the Court shall address Plaintiff Dixon's July 1, 2009 motion for leave to file a Second Amended Complaint pursuant to Fed. R. Civ. P. 15. (Doc. No. 25). Dixon seeks to add a claim for relief pursuant to the Lily Ledbetter Fair Pay Act of 2009 ("FPA"). Plaintiff was "unaware of the Fair Pay Act when she filed her First Amended Complaint but subsequently discovered its existence while conducting continuing legal education." (*Id*. at 2). Notably, the FPA became effective on January 29, 2009, before Plaintiff moved to amend the original Complaint, and before the Amended Complaint was filed.

*Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), involved a woman who allegedly had been paid unequally for equal work for several years based on a discriminatory pay

4

decision made twenty years earlier. The U.S. Supreme Court interpreted Title VII to mean that the unlawful employment practice occurred twenty years earlier when the initial pay decision was made and, thus, that Ms. Ledbetter's Title VII claim was time barred.

Congress disagreed and enacted the FPA to clarify that a discriminatory compensation decision or other practice that is unlawful under (1) Title VII of the Civil Rights Act of 1964; (2) the Age Discrimination in Employment Act of 1967; (3) the Americans with Disabilities Act of 1990; or (4) the Rehabilitation Act of 1973, occurs each time compensation is paid pursuant to the discriminatory compensation decision or other practice.

Plaintiff's proposed FPA claim is a not proper cause of action. The FPA simply specifies when charges may be filed for violations of Acts other than the EPA. Even if the FPA did relate to the EPA, Plaintiff would not need to state a separate cause of action under the FPA. A cause of action under Title VII, the ADEA, or the ADA would automatically incorporate the protections of the FPA. For these reasons, and specifically because the FPA does not create a new cause of action, Plaintiff's motion for leave to file a Second Amended Complaint is denied. (Doc. No. 25).

### III. Motion to Dismiss

Defendants argue that Plaintiff's new EPA claim should be dismissed because (1) an EPA claim cannot be based on a successor's pay rate, and (2) individuals are not "employers" under the EPA, and, thus are not proper parties to an EPA claim.

#### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Courts must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*,

5

127 S.Ct. 2197, 2200 (2007); *Thurman v. Pfizer, Inc*., 484 F.3d 855, 859 (6th Cir. 2007). "To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, Ohio, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 127 S.Ct. at 1965 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts to, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

In conjunction with this standard, the Court is cognizant that Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (citing *Twombly*, 550 U.S. at 596); see also *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir 2008). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to

6

the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008).

### B. Equal Pay Act

The EPA requires employers not to discriminate between employees on the basis of sex by paying wages to employees at a rate less than employees of the opposite sex. See 29 U.S.C. § 206(d)(1). In order for a plaintiff to establish a *prima facie* case of sex-based wage discrimination, she must show that "an employer pays different wages to employees of the opposite sex 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Conti v. American Axle and Mfg., Inc.*, 2009 WL 1424371, *12 (6th Cir. 2009) (citing C*orning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1)); *Balmer v. HCA*, 423 F.3d 606, 612 (6th Cir. 2005)). "Equal work" does not require that the jobs be identical, but only that there exist "substantial equality of skill, effort, responsibility and working conditions." *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998) (citing *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981)). To determine whether the work is substantially equal it "must be resolved by an overall comparison of the work, not its individual segments." *Id.*

"Once a plaintiff establishes a *prima facie* case of wage discrimination, the burden shifts to the defendant to prove that the difference in wages is justified by one of the affirmative defenses enumerated in 29 U.S.C. § 206(d)(1)." *Denman v. Youngstown State University*, 545 F.Supp.2d 671, 677 (N.D. Ohio 2008) (citing *Buntin v. Breathitt County Bd. Of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998)). There are four statutory affirmative defenses: (1) a seniority system, (2) a merit system, (3) a system which measures earnings by quantity or quality of production, (4) or any

7

factor other than sex. See *Corning Glass Works*, 417 U.S. at 196, 94 S.Ct. 2223; *Buntin v. Breathitt County Bd. Of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998).

### 1. Pleading Successors' Pay

There is no question that a plaintiff may meet her *prima facie* burden by demonstrating a wage differential between herself and her predecessor. See e.g. *Gandy v. Sullivan County*, *Tenn.*, 24 F.3d 861 (6th Cir. 1994). Whether a plaintiff may meet her *prima facie* burden by demonstrating a differential between herself and her successor has not been explicitly ruled on by the Sixth Circuit. *Huggins v. City of Dayton*, 2008 WL 728324 \*\*13-15 (S.D. Ohio 2008).

However, district courts in the Sixth Circuit have ruled on this issue. In *Bielawski v. AMI, Inc.*, a court in this district found the plaintiff in that case could not rely on her successor's pay in order to establish a *prima facie* case. 870 F.Supp. 771, 776 (N.D. Ohio 1994). The court did not allow the plaintiff's claim based on her successor's pay because: (1) employers would be deterred from giving pay raises to successors; (2) employers would risk liability whenever they paid a male more than the female he was replacing even if the raise is due to inflation; (3) 29 U.S.C § 206(d)(1) is written in the present tense, meaning that the statute applies to cases in which the employer "pays" employees of one gender less than contemporary employees of the opposite sex, and; (4) a present tense reading of the statute does not preclude it from applying to claims based on past employees' pay. *Id.* at 766.

The United States District Court for the Southern District of Ohio encountered the same issue, but did not rule on the question. See *Huggins*, 2008 WL 728324. In *Huggins,* the plaintiff was terminated from her job as a Secretary-Chief Examiner of the Dayton Civil Service Board. See *Id.* The plaintiff filed an EPA claim alleging that her male successor earned approximately

8

$12,500 more annually resulting in a violation of the EPA. *Id.* at *12. The *Huggins* court was aware of the *Bielawski* decision, but noted the ruling in *Bielawski* went against the weight of authority from other jurisdictions. *Id.* at *13. The *Huggins* Court did not decide whether the plaintiff satisfied her *prima facie* burden, and dismissed the case on other grounds. *Id.* The undecided issue in *Huggins* is now before this Court: under the EPA, can a plaintiff meet her *prima facie* burden by alleging a wage differential between herself and her successor?

The Court is convinced by the reasoning of courts that have answered in the affirmative. *See Lawrence v. CNF Transp., Inc.,* 340 F.3d 486, 492 (8th Cir. 2003) ("Under the EPA, the job comparison may appropriately consider immediate predecessors or successors of the plaintiff"); *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 613 (4th Cir. 1999); *Arrington v. Cobb County,* 139 F.3d 865, 876 n. 22 (11th Cir. 1998); *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1461 (7th Cir. 1994); *EEOC v. First Citizens Bank,* 758 F.2d 397, 402 (9th Cir. 1985); *Plemer v. Parsons-Gilbane,* 713 F.2d 1127, 1137 (5th Cir. 1983); *Dubowsky v. Stern, Lavinthal, Norgaard & Daly*, 922 F.Supp. 985, 991 (D.N.J. 1996) ("[t]he weight of the existing authority, as well as the better logic, convince this Court to permit plaintiff to establish her *prima facie* case through" a comparison between a former employee and their successor's wages). The Ninth Circuit has explained that:

> [t]he Equal Pay Act does not require that jobs being compared be performed simultaneously; it also encompasses situations where an employee of one sex is hired for a particular job to replace an employee of the opposite sex. See *Sinclair v. Automobile Club of Oklahoma, Inc*., 733 F.2d 726, 729 (10th Cir. 1984); *Peltier v. City of Fargo*, 533 F.2d 374, 377 (8th Cir. 1976); *Pearce v. Wichita County,* 590 F.2d 128, 133 (5th Cir. 1979); see also 29 C.F.R. § 800.114(c) (allowing successorship comparisons). Violations may be proved by comparing the woman's salary to that of her male successor. E.g., *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1137 (5th Cir. 1983); *Clymore v. Far-Mar-Co., Inc*., 709 F.2d 499, 503 (8th

9

> Cir. 1983); *Di Salvo v. Chamber of Commerce*, 416 F.Supp. 844, 853 (W.D.Mo. 1976), aff'd 568 F.2d 593 (8th Cir. 1978). Backpay would be awarded for the period prior to the male's hiring. See *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir. 1979) (in Title VII action, plaintiff entitled to backpay because her male successors paid more for substantially same work).

*EEOC v. First Citizens Bank*, 758 F.2d 397, 402 (9th Cir. 1985).

Here, the alleged difference in pay was $40,000. This is not a *de minimis* increase. Such an increase *may* serve as an indication of sex-based wage discrimination. In a situation such as this when Plaintiff's successor makes significantly more than she did, the weight of authority and logic dictate that Plaintiff may state a claim under the EPA. Dixon correctly makes out her *prima facie* case by alleging this wage differential between her pay at termination and her successor's pay at the onset of his new position. Thus, Defendant's motion to dismiss Plaintiff's EPA claim is denied.

### 2. Individual Liability

Dixon attempts to hold Defendants Jacobs and Logie individually liable for alleged violations of the EPA. Defendants request the Court to dismiss the EPA claim against Defendants Jacobs and Logie in their individual capacities. As explained below, this Court finds that the term "employer" under the EPA must be interpreted as it is interpreted under the Family and Medical Leave Act ("FMLA") and the Fair Labor Standards Act ("FLSA") and thus, Plaintiff may not bring suit against Jacobs and Logie in their individual capacities.

29 U.S.C. § 206(d)(1) provides, in pertinent part:

> No *employer* having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of

10

> the opposite sex in such establishment for equal work on jobs the performance of
> which requires equal skill, effort, and responsibility, and which are performed
> under similar working conditions . . . (emphasis added)

There are some inconsistent rulings amongst the district courts in this Circuit regarding whether employees of a public agency may be held liable in their individual capacity under the relevant statutes. See *Fraternal Order of Police Barkley Lodge #60, Inc. v. Fletcher*, 618 F.Supp.2d 712, 2008 WL 490590 (W.D.Ky. 2008) (holding that employees of public agencies may be held individually liable for violations of the FLSA); see also *Stephen v. Creal*, 2005 WL 1159411 (S.D. Ohio May 17, 2005) (holding that public officials may be sued in their individual capacities for violations of the EPA); but see: *Millington v. Morrow County Bd. of Comm'rs*, 2007 WL 2908817 at *14 (S.D. Ohio Oct. 4, 2007) ("The fact that Congress indicated an intent not to hold individual public agency officials liable under a similar definition in the FMLA suggests that Congress likewise never intended to impose individual liability on public employees under the FLSA"); see also *Castle v. Sullivan County*, 2008 WL 2887173 (E.D. Tenn. July 23, 2008) (holding that individual defendants cannot be held personally liable under the EPA because they are not "employers" pursuant to 29 U.S.C. § 203(d)).

In order to hold a defendant individually liable under the EPA, the defendant must be an "employer" as defined by the EPA. See 29. U.S.C. § 206. The EPA is an extension of the FLSA and incorporates the same definitions for the term "employer" and thus it is interpreted similarly. *Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 190, 94 S.Ct. 2223, 2226 (1974) (noting that the Equal Pay Act of 1963, 77 Stat. 56, § 3, merely "added to § 6 of the Fair Labor Standards Act of 1938 the principle of equal pay for

11

equal work regardless of sex")). Furthermore, the FMLA interprets the term "employer" invariably with the FLSA. *Mitchell v. Chapman*, 343 F.3d 811, 827 (6th Cir. 2003); *Wascura*, at 685-686 ("FMLA's definition of 'employer' is more similar to, actually it is materially identical with, the definition of 'employer' used in the [FLSA], 29 U.S.C. § 203(d)").

Therefore, the EPA's definition of "employer" is consistently analyzed with the FLSA and FMLA. Just as the Sixth Circuit in *Mitchell* held that under the FMLA individuals will not be personally liable as public employers, this Court rules that Defendants cannot be held liable in their individual capacities under the EPA. See *Mitchell,* at 829.

The EPA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency . . ." 29 U.S.C. § 203(d). A broad interpretation of the statute would seem to include literally anyone in a supervisory position whether it is employment with the State or in the private sector because most supervisors are acting directly for their employer's benefit. See *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir. 1983). The FMLA defines "employer," in part, as "any person who acts, directly or indirectly, in the interest of an employer." 29 U.S.C. § 2611(4)(A)(ii)(I). "This language mirrors the FLSA's definition of 'employer.'" *Mitchell*, 343 F.3d at 827 (Compare 29 U.S.C. § 2611(4)(A)(ii)(I) with 29 U.S.C. § 203(d) ("'Employer' includes any person acting directly or indirectly in the interest of any employer in relation to an employee and includes a public agency, but does not include any labor organization"); see also *Chandler v. Specialty Tires of America,* 283 F.3d 818, 827 (6th Cir. 2002) (citing *Frizzell v. Southwest Motor Freight,* 154 F.3d 641, 644 (6th Cir. 1998) ("…the legislative history of the FMLA reveals that Congress intended the remedial provisions of the FMLA to mirror those in the FLSA…")).

12

In *Mitchell,* the Sixth Circuit extensively considered the language of the FLMA and FLSA. 343 F.3d at 827-828.  The court concluded that the language of the FMLA precluded individual liability for public agency employees.  *Id.* at 830-831; Compare *Keene v. Rinaldi*, 127 F.Supp.2d 770, 775 (M.D.N.C. 2000) (explaining that Congress separated the individual liability provision from the public agency provision in an effort to clarify the "commingling" of public agency and private employers evident in the FLSA) with *Morrow v. Putnam*, 142 F.Supp.2d 1271, 1273 (D. Nev. 2001) (interpreting the individual liability provision and public agency provision as inter-related).  The *Mitchell* court aligned itself with *Keene,* and held that "the individual liability provision and public agency provision are separate and distinct." *Id.* at 831.

The District Court for the Western District of Kentucky in *Fraternal* did not find the connection between the FMLA and the FLSA convincing.  618 F.Supp.2d at 712.  The court's reasoning was in concert with the Seventh Circuit.  See *Luder v. Endicott*, 253 F.3d 1020 (7th Cir. 2001) (holding individuals in a public agency may be held personally liable).  In *Fraternal,* the court focused on the plain unambiguous reading of the statute.  618 F.Supp.2d at 721.  However, this Court agrees with the reasoning in *Wascura,* which held that public officials sued in their individual capacity cannot be an "employer" because it is only in her official capacity that she has authority over the employee's terms of employment.  *Wascura*, 169 F.3d at 686.

Simply stated: in *Millington*, a district court in this Circuit held that public-sector employees cannot be held personally liable under the FLSA, 2007 WL 2908817 at *14, and this Court agrees with the district court in this Circuit which ruled that the same is true under the EPA, *Castle,* 2008 WL 2887173 at *3.  Defendants Jacobs and Logie are not "employers" pursuant to

13

the EPA and therefore, Plaintiff's claims alleging violations of the EPA cannot be sustained against them in their individual capacities.

**IV. Conclusion**

For the reasons stated above, Plaintiff Crystal Dixon's motion to amend the Amended Complaint and file a Second Amended Complaint is denied. (Doc. No. 25). Defendants' first motion to dismiss is denied as moot. (Doc. No. 12).

Defendants' second motion to dismiss is granted in part and denied in part. (Doc. No. 20). Defendants' motion to dismiss Plaintiff's entire EPA claim is denied, however the motion to dismiss the EPA claim is granted with regard to Defendants Jacobs and Logie in their individual capacities.

IT IS SO ORDERED.

                           s/ *David A. Katz*
                           DAVID A. KATZ
                           U. S. DISTRICT JUDGE